Filed 5/29/13  In re R.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.M. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057408 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ118753) |
| v. | OPINION |
| Y.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Mother appeals from a judgment terminating her parental rights to three children, R.M., A.G., and G.D. (Welf. & Inst. Code,[1] § 366.26.) The children became dependents due to physical abuse of two of the children, and domestic violence in the home. After an incident between mother's oldest child, S.R.,[2] and G.D., Sr., the father of G.D., Jr., G.D., Sr. was required to move out of the family home. Mother eventually was allowed unsupervised visits with the children providing G.D., Sr. was not present in the residence, but the Department of Public Social Services (DPSS) learned that mother had allowed G.D., Sr. back into the home when the children were present. At the 12-month review hearing, mother's services were terminated and a section 366.26 hearing was set. Prior to the section 366.26 hearing, mother filed a petition for modification (§ 388) which was denied. The court terminated parental rights and mother appealed.

On appeal, mother argues that the court erred (1) in denying her section 388 petition, and (2) in terminating her parental rights. We affirm.

## BACKGROUND

Y.R. is the mother of all the children. G.D., Sr., is father of G.D., Jr., and S.D.[3]

On July 26, 2009, a cousin of the children called police to report that her uncle, the

---

[1] All further references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] S.R. became an adult during the dependency and the petition was dismissed as to him.

[3] S.D. was born after jurisdiction had been established as to his older siblings.

2

father in this case, was abusing her cousin and aunt. R.M., then 11 years old, A.G., then eight years old, along with their older brother S.R.,[4] immediately became the subject of an emergency response due to physical abuse by G.D., Sr., and mother. The three children were afraid to go home, describing a history of excessive discipline by both parents, including hitting, throwing shoes at the children, and forcing A.G. to eat from the trash if he did not finish a meal. Because G.D., Jr., was not present, a detention warrant was obtained. When picked up on the warrant, G.D., Jr. had bruises on his legs and a large red mark on his back.

Dependency petitions were filed in San Bernardino County, then the county of domicile of the family, as to the four older children (including S.R.) alleging physical abuse of R.M. and A.G. (§ 300, subd. (a)), neglect, failure to protect, and a history of domestic violence (§ 300, subd. (b)), parent left children without provisions (§ 300, subd. (g)), and physical abuse of siblings. (§ 300, subd. (j).) Prior to the jurisdictional hearing, the parents moved out of the county. At the jurisdictional hearing, the court dismissed the physical abuse allegations (§ 300, subd. (a)), but found the children came within section 300, subdivisions (b) and (j).

At the dispositional hearing held in Riverside County on December 17, 2009, the court declared the children dependents, and removed custody from all parents. The court ordered supervised visits for the mother, but gave the social worker authority to liberalize

---

[4] See footnote 2. This child is only mentioned where necessary for context.

visits if they went well. The court also authorized the social worker to place the children with mother if appropriate. On February 14, 2010, unsupervised overnight and weekend visits commenced. On April 8, 2010, the maternal grandmother's home was cleared for placement of the children.

On May 20, 2010, a sibling petition was filed respecting S.D., who was born in April, 2010. (§ 300, subd. (j).) In the detention report, the social worker noted that the parents had completed parenting and anger management, but there was a domestic violence incident shortly before S.D.'s birth, in which father, who had been drinking, became verbally abusive to mother. When S.R. tried to quiet him down, father grabbed S.R.'s collar, and choked him. Because of this incident, the parents' visits were made supervised and father reportedly moved out of the home. Mother was informed that for S.D. to remain in the home, father needed to remain out of the home and mother indicated she understood. S.D. was detained from father, but placed with his mother on a family maintenance program.

Mother's compliance with services was marginal during the first six months: although she attended parenting classes, she was reported to be inattentive and disinterested in class and did not participate in group discussions or complete homework. She did not appear to understand the dynamics of children trying to get their basic needs met and was not motivated to improve. In fact, her participation was described as hostile-passive and she did not learn the skills taught or demonstrate the ability to change her behavior, despite receiving a completion certificate. Mother did better in anger

4

management where she appeared to benefit from the service, but she was discharged from individual therapy for failure to attend, claiming she did not need therapy.

After the domestic violence incident in April 2010, mother was informed she needed to repeat parenting and anger management classes, and to address issues of domestic violence; mother disagreed with this decision, as she did not see the need to repeat services. Visitation with the children during this period vacillated between acceptable and destructive, showing the parents had made minimal progress. A.G. and G.D., Jr., wanted to go home with their mother, but R.M. wanted to live with her grandmother.

On July 21, 2010, the court conducted a combined six-month review hearing (as to the older children) and jurisdictional-dispositional hearing as to the baby, S.D. The reports were received into evidence without objection and the court found mother's progress was minimal. At the hearing, mother's counsel represented that mother absolutely would not allow father back into the home and that her children were her number one priority. Although the children's attorney informed the court that they wanted to return to their mother, counsel stated they were adamant about not wanting to live with father. Minor's counsel also expressed the children's confusion about mother's representations she would keep the father away, when mother was receiving services geared at reuniting with father. Mother admitted she had not told the children she was in the process of reunifying with father.

The court ordered unsupervised overnight and weekend visits for mother on the

5

condition that father not be present and not reside in the home, admonishing mother that a violation of this order would mean "go[ing] all the way back to square one." As to S.D., the court found the allegations of the sibling petition to be true, allowed mother to retain physical custody, and ordered her to participate in maintenance services.

By August 2010, mother had a part-time job in retail sales, and was cooperative in participating in services. However, on July 31, 2010, mother attended a family party with the children where father was also present, cooking on the grill. As a result, visits were made supervised and the social worker assessed the parents' progress as minimal to satisfactory. On October 20, 2010, the court conducted a progress review hearing; it reinstated unsupervised visits for mother on condition that father was not present, and authorized the social worker to return the children to mother when appropriate.

During the next reporting period, mother was compliant with individual therapy but continued to maintain her innocence, denied abusing her children, and denied any history of domestic violence. Her progress was considered minimal. In December of 2010, the children told their now-adult older brother S.R. that father was at Thanksgiving dinner with them, which S.R. relayed to the social worker. The social worker was concerned that mother continued to allow father in the home; additionally, on three home visits, mother's residence was unkempt, with debris on the floor that presented a choking hazard for the baby, S.D. The social worker's assessment questioned whether mother had benefitted from services based on her continued involvement with father.

On January 3, 2011, a record search revealed father had been arrested for drunk

driving, resisting arrest, assaulting a peace officer, driving on a suspended license, and failure to provide proof of insurance. Mother and S.D. were in the car at the time of the arrest, so he was also charged with willful cruelty to a child.

On January 11, 2011, the social worker made an unannounced visit with law enforcement (a fugitive warrant against father was outstanding) to mother's residence. While the authorities were there, father was seen escaping out a bedroom window. The children admitted to the social worker that father had been present at all or most of the children's unsupervised visits with mother, and that he spent the night in the mother's residence. A supplemental petition, pursuant to section 387, was filed as to S.D., and he was detained.

On February 9, 2011, the court conducted a contested review hearing as to the older children, and a jurisdictional-dispositional hearing on the supplemental petition as to S.D. As to the status review of the older children, the parties submitted on the social worker's reports and the court terminated reunification services as to R.M., A.G., and G.D., Jr. At that same hearing, the court also terminated the dependency of S.R., who was an adult. As to the jurisdictional-dispositional hearing on the supplemental petition relating to S.D., the court removed custody of S.D. from the mother and denied her reunification services pursuant to section 361.5, subdivision (b)(10) [failure to reunify with siblings].

On June 21, 2011, the social worker submitted a section 366.26 report recommending that the maternal grandmother be appointed as legal guardian of the three

older children who were still dependents. A paternal aunt and uncle sought placement of S.D. for adoption. Due to non-exemptible convictions, the paternal relatives' home could not be certified, so the court determined that S.D. should be placed with the maternal grandmother along with his sibling and half-siblings. However, S.D. could not be placed with grandmother until her home was certified. Certification had been delayed because of lack of beds and bedding, which she acquired by the time of the August 25, 2011 post-permanency review hearing. (§ 366.3.)

In September 2011, the social worker submitted an addendum to the section 366.26 report, recommending adoption of all four children by the maternal grandmother. Mother visited S.D., the youngest child, monthly, while he remained in foster care with the paternal relatives, but had not visited the other children because she refused to call the maternal grandmother to set up visitation. On September 19, 2011, the court continued the section 366.26 hearing to facilitate an adoption home study of the maternal grandmother's home, and ordered S.D. placed with maternal grandmother for an extended visit pending the next hearing.

On February 10, 2012, the social worker submitted a post-permanency review report which indicated that mother had moved to Arizona to be with her husband, G.D., Sr., and that she had been in Arizona since the previous hearing. The report indicated that at visits, mother talked about the case in front of the children and screamed at the maternal grandfather, creating a scene at a McDonald's restaurant. Mother informed the social worker that she had moved to Arizona to be with father.

8

On February 17, 2012, another addendum report was submitted to provide the court with the completed adoption assessment. R.M. and A.G. expressed a desire to be adopted by the maternal grandmother. G.D., Jr., wanted to stay with his grandmother, but also expressed a desire to go home, although he did not want to be with his father.

On June 25, 2012, mother filed a petition for modification of the prior order denying services as to S.D., and terminating services as to the older children. Mother alleged her circumstances had changed in that she had completed another parenting program, maintained visits, shared a strong bond with all the children, had stable full-time employment and maintained housing for the children. Attached to the petition was an undated certificate of completion of a 10-hour parenting program, and a short letter (not written on letterhead stationery) signed by the back office supervisor of John C. Lincoln, stating mother worked there and was doing a great job.

The combined sections 388 and 366.26 hearing was conducted on August 30, 2012. No party objected to the admission into evidence of the social worker's reports. Mother testified in support of her petition for modification, and her testimony was considered at the section 366.26 portion of the hearing. Mother indicated that since services had been terminated on March 9, 2011, she had completed an additional parenting program in Arizona and is also enrolled in an additional domestic violence course, of which she has completed six of the 12 required sessions.

Mother also indicated she had moved to Arizona for job reasons. She denied telling the social worker that she lived with father or had a relationship with him.

9

However, she acknowledged that father also lived in Arizona, although in a different city than mother currently resides, and admitted she had talked to his sister recently about father's health issues and that she had spoken to him a month or two prior to the hearing. She visited her children regularly and described the quality of the visits and the children's excitement to see her.

The court admitted all reports in evidence without objection and found no change in circumstances to warrant the requested modification. The court then proceeded with the section 366.26 hearing. Mother objected to the proposed termination of her parental rights because she had maintained visits and severance of the parental relationship would be detrimental. The court admitted the section 366.26 reports into evidence without objection, found the children to be adoptable, determined that termination of parental rights would not be detrimental as none of the statutory exceptions applied, and severed the parental rights of the parents.

Mother appealed.

## DISCUSSION

**1. The Court Did Not Abuse Its Discretion in Denying Mother's 388 Petition.**

Mother contends that the court abused its discretion in denying her section 388 petition to reinstate reunification services. Mother contends that she demonstrated a substantial change of circumstances insofar as she had taken another parenting class, was taking an additional domestic violence course, had gained skills from these programs, was gainfully employed full time, and was not involved with G.D., Sr. We disagree.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 316-317.) The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529 (*Kimberly F.*).) Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.)

In evaluating whether the petitioner has met the burden to show changed circumstances, the trial court should consider: (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F., supra,* 56 Cal.App.4th at p. 532.) The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*In re Stephanie M., supra,* 7 Cal.4th at p. 318; *In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Here, the court correctly determined that mother's circumstances were changing, but not changed. However, changing circumstances do not warrant a modification of a

11

prior order.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  Mother's testimony that she was no longer in a relationship with father and no longer resided with him was not entitled to any weight in light of the history of the case in which mother repeatedly made the same claims which turned out to be untrue.  Additionally, mother did not object to the admission of the social worker's reports indicating mother informed the worker that she had moved to Arizona to be with G.D., Sr., nor did she call the social worker to the witness stand to cross-examine her on that issue.

Mother's additional programs do not demonstrate changed circumstances where she had taken the same programs during the reunification period but failed to benefit from the services, as demonstrated by allowing father into the home while the children were present in violation of court orders.  In any event, mother never completed the individual therapy requirement of the original plan and showed no inclination to do so at the hearing on her petition.  Nor had she completed the second domestic violence program she had started in Arizona, despite having a year to do so.  The reason for the dependency was mother's inability to protect her children from father's violent tendencies and this circumstance continued to pose a risk at the time of the hearing on mother's section 388 petition.  Her circumstances were not changed.

Further, mother failed to demonstrate that modification of the prior order would be in the children's best interest.  We accept that the children were bonded to mother; however, all of them were adamant about not wanting to live with father.  Mother's testimony that she was no longer involved with father was belied by her history of

maintaining that relationship while making similar promises to put her children's welfare first. Her inability to protect the children from the father's violence supports the conclusion that modification would not be in their best interests. The court did not err in denying the modification petition.

**2.      Substantial Evidence Supports the Court's Findings that the Children Are Adoptable and that Terminating Parental Rights Would Not Be Detrimental.**

Mother argues that the court erred in terminating parental rights because the evidence showed the children had a beneficial parent-child relationship with their mother. We disagree.

Section 366.26, subdivision (c)(1), provides that if the court determines, based on the [adoption] assessment and any other relevant evidence, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption, unless one of several statutory exceptions applies. Once the court determines a child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would detrimental under one of the exceptions listed in section 366.26, subdivision (c)(1)(B). (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 809, citing *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1343-1345.) We must affirm a trial court's rejection of the exceptions if the ruling is supported by substantial evidence. (*Zachary G.,* at p. 809.)

One such exception applies when the court finds a compelling reason for determining that termination would be detrimental to the child because the parents have

13

maintained regular visitation and contact with the child, and the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) This exception applies only when the relationship with a natural parent promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) The determination of whether a beneficial parent-child relationship exists is reviewed for substantial evidence. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314.)

To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466 [italics in original], citing *In re Lorenzo C., supra,* 54 Cal.App.4th at p. 1342.) The factors to be considered when looking for whether a relationship is important and beneficial are: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. (*In re Angel B., supra*, 97 Cal.App.4th at p. 467; see also *In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

Here, R.M. and A.G. had spent a larger portion of their lives in mother's custody, but they expressed the preference for adoption by their grandmother. G.D., Jr., lived five-eighths of his life with mother, and while he wanted to see his mother, he was happy in his current placement. S.D. has spent more than half his life removed from his

14

parents' custody, and was described as loving toward his relative caretaker and siblings.

We agree mother visited regularly. Nevertheless, she failed to show that the attachment was so strong that severing the relationship would greatly harm the children. Mother's choice to move to Arizona, which increased geographic distance and made visitation problematic, was aggravated by the lack of attention she paid to the older children during monthly visits. In fact, in June 2012, mother told R.M. she should go on with her [R.M.'s] life and she [mother] would forget her. The children desired to be adopted, demonstrating that termination of parental rights would not be detrimental. The risk that mother would resume her relationship with father, if she was not maintaining it, was a real threat, also demonstrating that severing the relationship of parent and child would not be detrimental.

The court properly found that none of the exceptions in section 366.26, subdivision (c)(1), applied.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


McKINSTER
J.


CODRINGTON
J.

15